UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>      Plaintiff,<br><br>vs.<br><br>LYNCH E. ARTHUR,<br>        Defendant. | )<br>)<br>)<br>)<br>)<br>) Criminal Action<br>) No. 12-10025-DJC<br>)<br>)<br>)<br>) |

**SENTENCING HEARING**

BEFORE THE HONORABLE DENNIS J. CASPER
UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
Boston, Massachusetts 02210
June 28, 2013
2:00 p.m.

\*   \*   \*   \*

CATHERINE A. HANDEL, RPR-CM, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5205
Boston, MA 02210
(617) 261-0555

APPEARANCES:

For the Plaintiff:

UNITED STATES ATTORNEY'S OFFICE
(By: AUSA Kenneth G. Shine, and
     AUSA Robert E. Richardson)
     John J. Moakley Courthouse
     One Courthouse Way, Suite 9200
     Boston, MA 02210


For the Defendant:

FEDERAL DEFENDER'S OFFICE
(By: Timothy G. Watkins, Esq.)
     51 Sleeper Street
     Fifth Floor
     Boston, MA 02210



ALSO PRESENT:

FEDERAL PROBATION SERVICES
By:    Craig A. Orze
       John J. Moakley Courthouse
       One Courthouse Way, Suite 1200
       Boston, MA 02210-3027

```
1                    P R O C E E D I N G S
2              (The following proceedings were held in open court
3    before the Honorable Dennis J. Casper, United States District
4    Judge, United States District Court, District of Massachusetts,
5    at the John J. Moakley United States Courthouse, 1 Courthouse
6    Way, Boston, Massachusetts, on June 28, 2013.
7              The defendant, Lynch E. Arthur, is present with
8    counsel.  Assistant United States Attorneys Kenneth G. Shine and
9    Robert E. Richardson are present.)
10             COURTROOM DEPUTY CLERK HOURIHAN:  Criminal Action No.
11   12-10025, United States versus Lynch Arthur.  Would counsel
12   please state your name for the record.
13             MR. SHINE:  Your Honor, good afternoon.  Kenneth
14   Shine for the United States Government.
15             MR. RICHARDSON:  Also Robert Richardson for the
16   United States.  Good afternoon, your Honor.
17             THE COURT:  Good afternoon.
18             MR. WATKINS:  Good afternoon, your Honor.  Tim
19   Watkins, Federal Defender Office on behalf of Lynch Arthur.
20             THE COURT:  Afternoon counsel.  Good afternoon, Mr.
21   Arthur.
22             THE DEFENDANT:  Good afternoon.
23             THE COURT:  Counsel, I know that we're here for
24   sentencing.  Before we begin, I just want to make sure that I
25   have everything, all the written materials you wanted me to
```

1    review:  The presentence report as revised, as revised June

2    21st; the sentencing memo on Mr. Arthur's behalf filed June

3    24th; and the government's sentencing memo filed June 14th.

4              MR. WATKINS:  I think that's everything.

5              MR. SHINE:  That would be it, your Honor.

6              THE COURT:  Okay.

7              Mr. Watkins, have you had an opportunity to go over

8    the PSR with Mr. Arthur?

9              MR. WATKINS:  I have.

10             THE COURT:  Okay.  And other than the objections that

11   were noted in the addendum, which I think Probation addressed,

12   are there any other objections to the factual contents?

13             MR. WATKINS:  There is not.

14             MR. SHINE:  There is not, your Honor.

15             THE COURT:  Okay.  In terms of the Base Offense

16   calculation, I think there may have been some objections to

17   the Base Offense calculation other than the Career Offender

18   calculation, but I think the parties are in agreement that the

19   Career Offender category applies here.  Is that the

20   government's position?

21             MR. SHINE:  The government initially filed some

22   objections and then since withdrawn them and then with the

23   Career Offender Guideline kicking in, it becomes moot.

24             THE COURT:  Mr. Watkins, is that your position as

25   well?

```
 1          MR. WATKINS:  That is accurate, your Honor.  As the
 2    Court has identified, it was the alternative calculation,
 3    really, that was at issue and I think the Probation Department
 4    did get it right here.
 5          THE COURT:  Okay.  Well, given that the parties
 6    recognize that the Career Offender Guideline provision applies
 7    under the advisory Guidelines, I will adopt the offense level
 8    calculation, Base Offense Level of 32, with three levels off
 9    for acceptance, for a Total Offense Level of 29, and Category
10    VI which applies as the operation of the Career Offender
11    Guideline.  As I understand it, counsel, that leads to an
12    advisory Guideline Sentencing Range of 262 months to 327
13    months.  As to Counts 1 and 3, one to three years of
14    supervised release, and as to Count 2, two to five years of
15    supervised release, a $250,000 fine and a total of $300
16    special assessment.
17          Counsel, my memory is that the money stolen was
18    recovered.  So, there's no restitution.
19          MR. SHINE:  That's correct, your Honor.
20          THE COURT:  Mr. Shine, I'll hear the government's
21    recommendation.
22          MR. SHINE:  $664 and some change, that's why we're
23    here today.  Lynch Arthur is a violent career criminal in the
24    literal, if not statutory, sense.  Arthur and his co-defendant
25    were arrested and now convicted, following a brazen gutless
```

1    armed robbery of the Metro PCS store on October 31st, 2011.

2         This Court has had the benefit of hearing the facts

3    of this matter having presided over a four-day motion to

4    suppress and a five-day trial with the co-defendant, Ronald

5    Brown.  The facts as outlined in the PSR are generally not in

6    dispute.  So, I won't need to restate them.  I will, however,

7    highlight some of the issues because I believe they will help

8    the Court to understand and appreciate the government's severe

9    sentencing recommendation.

10         On October 31st, Lynch Arthur and Ronald Brown, both

11   armed with loaded semi-automatic weapons, entered and robbed

12   the Metro PCS store in Copley Square.

13         This was not a random act.  It was not a smash-and-

14   grab or some drug-fueled endeavor, which, unfortunately, this

15   Court sees far too often.  This was cold, calculated venture.

16   Both robbers wore dark glasses and dark clothing.  They wore

17   hats to obscure their identities.  Lynch Arthur donned white

18   work gloves to hide his fingerprints.  Ronald Brown,

19   co-defendant, wore tape on his fingers.

20         As they entered the store, Lynch Arthur was seen

21   carrying a black nylon bag.  They directed the clerk into a

22   back room.  They displayed their handguns.  And Lynch Arthur

23   removes duct tape, is observed on video duct taping the store

24   clerk, first her hands, then her feet.  She's then placed on

25   the ground and her mouth is duct taped.  The two individuals

1    continue to rob her and eventually leave commencing their

2    escape.

3            As they leave the store, the clerk is observed on

4    video getting to her feet.  She collects herself and then

5    removes the tape from her hands.  However, is unable to remove

6    the tape from her feet, and she's observed on video hopping to

7    the front door, as she locks the front door and contacts her

8    supervisors.

9            I have to suggest, your Honor, her hopping to the

10   front door with one of the more dramatic scenes during our

11   recent trial.

12           Eventually the Boston Police arrive and descriptions

13   of the individuals involved in the robbery go out.  Lynch

14   Arthur and Ronald Brown leave the store on foot heading down

15   Moultrie Street towards the Shawmut T station.  They turn on

16   to Seaborn Street and then on to Kenwood.

17           As they proceed down Kenwood, hearing now the

18   responding Boston police officers, they ditched the black

19   nylon bag now containing their weapons, the duct tape, and the

20   robbery proceeds, $664 and some change.  They dump it into a

21   blue recycle bin and continue removing -- and Brown continues

22   -- or starts removing clothing, dropping articles of clothing

23   in the nearby bushes.

24           Within minutes they're observed by Detective Timothy

25   Goldan who has received radio broadcasts, that after two

minutes of investigation the two are stopped, returned to the
Metro PCS where they're positively identified by the clerk,
Ms. Jessica Rodriguez.

I want to talk a little bit about Lynch Arthur.
Lynch Arthur is a Career Offender in the literal, if not
statutory, scheme.  He is 41 years old.  The PSR that was
prepared reflects that he's been arrested 13 times since the
age of 19.  That's 22 years ago.

He was arrested in 1984 and convicted of unarmed
robbery.  He was convicted.

He was arrested and convicted in 1991 with possession
of a firearm, possession of narcotics, receiving a sentence of
one year in prison.

He was arrested and convicted in 1991 again with
possession to distribute marijuana.  On this case he received
another one year in prison.

He was arrested and convicted in 1992 with possession
of a firearm.  He received one year in prison.  He has had his
probation violated and was sentenced to an additional 18
months.

He was arrested and convicted in 1994 with possession
of marijuana, received a sentence of three months in prison.

He was arrested and convicted in 1995 with
distributing heroin in a school zone.  He was received a jail
sentence of two and a half years in prison.

1          He was arrested and convicted in 2000 for possession

2     of narcotics, receiving a probationary term.

3          And, finally, in 2002, he was arrested and convicted

4     in the United States District Court of Maine of conspiracy to

5     distribute cocaine in excess of 50 grams.  On that matter he

6     was sentenced to eleven and a half years in federal prison.

7     Upon his release, he was subject to supervised release.  He

8     committed this offense while under the supervision of the

9     United States Probation Department.

10          By my calculations, since he turned 19, which was 22

11     years ago, Lynch Arthur has spent 19 of those years in prison,

12     almost his entire adult life.

13          As a result of the above convictions, he has been

14     classified as a Career Offender.  Had this matter proceeded to

15     trial, he would be looking at a sentence of 360 months to

16     life.  With acceptance of responsibility, that's reduced to a

17     range of 262 to 327 months.  The government would be well

18     within its bounds to file an information pursuant 18 United

19     States Code 3559, which would have mandated a mandatory life

20     sentence for Mr. Arthur.

21          The facts of this case and Mr. Arthur's criminal

22     record would warrant such an action.  We, however, have not

23     done that.

24          Let me turn a bit to the defendant's sentencing

25     memorandum where it seems to place the blame for this incident

entirely on his co-defendant, Ronald Brown.  Do not let this
argument sway you.  This will be Lynch Arthur's third gun
offense.  This will be his second robbery offense.

Lynch Arthur participated in this gutless, cowardly
act as a participant.  Lynch Arthur carried a black nylon bag
containing duct tape into the store.  Lynch Arthur carried a
loaded .45 caliber ammunition into the store.  Lynch Arthur
put on sunglasses.  Lynch Arthur put on a hat to obscure his
identity.  Lynch Arthur donned gloves to hide his fingerprints
he might have left, and Lynch Arthur removed a roll of duct
tape and Lynch Arthur duct taped the clerk in this case on her
hands, on her feet, and then placed her on the ground and duct
taped her mouth.

In the realm of matters which come before this Court,
this clearly must rank as one of the most severe.  This was a
cold, calculated endeavor.

Under 18 United States Code, this Court must conduct
an analysis of criteria to formulate any sentencing issues.
This Court has had the benefit of observing the victim, the
clerk, in this case, not only during the motion to suppress
hearing, but during the trial.  This Court is aware of the
impact on the fear, of the daily fear she has where she didn't
even want to look at this man for what he did to her.

This sentence must promote respect for the law.  This
sentence must provide punishment for the offense and serve as

1    a deterrent to future criminal conduct.  This sentence must

2    protect the public from further crimes of the defendant.

3         At no time during his life has Lynch Arthur

4    demonstrated any inclination or desire to stop his violent

5    criminal conduct.  The only time he stopped committing these

6    crimes is when he's placed in prison.  He has disregarded the

7    law.  He has refused to conform his behavior to acceptable

8    societal norms.  This sentence I'm asking the Court is

9    dictated by the defendant's own actions and decisions and it's

10   necessary to protect the public from the defendant and deter

11   similar conduct.

12        The government requests this Court impose a sentence

13   of 262 months, the low end of the advisory Guidelines, to be

14   followed by a period of five years of supervised release and

15   a mandatory special assessment of $300.  This is the right

16   thing to do.  $664 and some change, your Honor.  Thank you.

17        THE COURT:  Thank you, Mr. Shine.  Mr. Watkins.

18        MR. WATKINS:  Thank you, your Honor.

19        There really is no dispute on the facts and, indeed,

20   Mr. Arthur admitted fully to the facts and his participation.

21   There's no dispute as to the consequences, particularly as to

22   the teller who genuinely was fearful and continues to be

23   fearful and has those long-lasting consequences as a result of

24   being the victim.

25        For those reasons that I'm not asking for time

1    served.  I'm not asking for five years or the seven-year

2    mandatory minimum.  I have recommended and continue to

3    recommend to the Court a sentence of 130 months, just shy of

4    eleven years.

5           This is, as the Court heard, undisputed as to the

6    nominal application of the Guidelines.  Mr. Arthur, indeed, is

7    a Career Offender, as determined by the Sentencing Commission,

8    but a Career Offender as a result of two completely non-

9    violent crimes, convictions, both resulting in a sentence of

10   imprisonment, but also where violence was completely not

11   present.

12          In the prior drug cases there's no occasion of a

13   firearm being used.  There's no indication of any kinds of

14   violence associated with what was, in essence, petty drug

15   dealing.  So, while he is, indeed, a Career Offender, it is in

16   a sense a different kind of Career Offender than the Court

17   might ordinarily see, certainly a different kind of Career

18   Offender than the government is arguing here, a person with a

19   nonstop record of violent crime.  It's simply not true.  The

20   Court has read through the presentence report.  The Court can

21   make its own judgment on whether the government is correct.

22          The government also talks about the continuous nature

23   of Mr. Arthur's criminality.  Again, the Court has the facts

24   and the Court has the presentence report.

25          What is notable is that Mr. Arthur completed 44

1   months of supervised release, nearly off of it, this last

2   federal conviction he had.  Certainly not in any way to

3   minimize the additional culpability of committing a crime

4   while on supervised release, but, indeed, he faces sentencing

5   before Judge Zobel for the fact that he committed on that and

6   Judge Zobel will make her own determination about the severity

7   of that.

8         What is notable is that that is not a continuous --

9   it's not a record of continuous violent activity, but one who

10  is supervised and, indeed, is trying to do his best despite

11  the significant hurdles is -- I would say is an indication of

12  his maturity and the fact that he was, indeed, turning the

13  corner here.

14        THE COURT:  Counsel, can I ask you, what would you

15  have me do with the fact that, if I recall correctly, he was

16  sentenced to 136 months in 2002?

17        MR. WATKINS:  And this sentence is certainly

18  commensurate.  It's a different kind of crime and a very

19  serious crime as the offense in 2002 was with drug dealing.

20  I'm not trying to minimize either of those, but that is a

21  reason why it's in excess of eleven years I'm recommending --

22  or almost eleven years here.

23        Notwithstanding the fact that while there is

24  psychological -- lingering psychological effects, this is a

25  case where there was no physical injury to the teller and a

case where the Sentencing Commission would say absent the

Career Offender, absent the 924(c), a sentence far lower than

that, 70 to 87 months would be appropriate.  This is almost

twice what the Sentencing Commission would say is a reasonable

sentence, given many of the circumstances that are present

here.

So, I understand the Court's questions, how can one

go back.  There are crimes and there are crimes.  This is a

sentence of six months less.  I've written how I got to that

particular outcome.  Were the Court to go somewhat higher than

that, that would be appropriate.  It would be within the range

of reasonable sentences here.

But I guess what I'm arguing here is 262 months

really results in an unreasonable sentence.  The government

seems to argue that they are being the reasonable ones here,

all the ways they could have charged him, all of the ways that

the sentencing could have gone higher.

Oddly enough, one of the reasons it should be higher,

apparently, is because if he had gone to trial, it would be

360 to life.  Well, he didn't.  Unlike Mr. Brown, he did not.

He admitted freely before the Court his involvement here

unequivocally without any kind of plea agreement.  So, I think

the government's thought that 360 to life is the proper

sentence really has no basis in reality.

Then the question becomes, really, is the 262-month

sentence the reasonable one.  Well, that in itself is driven

by the government's decision to charge the 924(c) here,

knowing that Mr. Arthur would be subject to the Career

Offender provision.  In essence, the government sets the

Guideline sentence here of 262 months on the low end.

So, I think where the government is talking about how

reasonable it's being, talking about the low end of the

Guideline, I suppose one could say that.  One could also say

they're being unreasonable in the way they charged the case

because they could have ended up with a very, very substantial

sentence without charging that 924(c) count.

Really, at the end of the day, it comes back to what

is the reasonable sentence under §3553(a).

I've written at some length in the sentencing memo

and I don't want to repeat myself in there other than to say

this is a case where, according to the Sentencing Commission,

there's quite a wide range of sentences that could be

considered sufficient but not greater than necessary.  For the

reasons the Court already elucidated and I've spoken of, I

think it would be unreasonable for the Court to come down as

far as 70 or 87 months because of the prior record.

By the same token, 130 months is a lot of time for

someone who is 41 years old.  It will keep him in prison until

his early 50s.  All the studies we have talk about the risk of

recidivism and how it tapers off with age.  I think that in

1    conjunction with the fact that notwithstanding this incident

2    that he got into with Mr. Brown, Mr. Arthur was already

3    showing signs of the tapering of the recidivism.  I think

4    another ten years where he gets out in his early 50s will be

5    more than enough to ensure.  If that weren't the case, the

6    Court has a range of supervised release it can impose.  I,

7    like the government, have asked for the maximum five years.  I

8    think that would be appropriate here.

9         It is clear that Mr. Arthur needs help to get over

10   the kinds of issues that -- lingering from his childhood,

11   physical, cognitive, substance abuse, and will need those

12   kinds of help all of his life.  Sometimes it works.  Other

13   times it ends up horrifically, as it has here, but that does

14   not mean it's time to throw away the key on Mr. Arthur.

15        Quite the opposite.  It means that there are ways to

16   help him and that once he gets into his 50s and is provided

17   with those kinds of --  that kind of help by the Probation

18   Department, in fact, he can get his life on track, can be the

19   kind of father that he was denied when he was a child.

20        Your Honor, as far as the facts of the case, I would

21   note the government is quite correct on the things that Mr.

22   Arthur did.  I am, I think, the only one in the room who has

23   not heard all of the evidence during the motion to suppress.

24   The Court recalls Ms. Byrne from our office conducted that.

25   The Court had the added advantage of having seen the trial of

1   Mr. Brown.  So, nothing I can say can really add too much to

2   any of that.

3         I think the Court can draw its own conclusions about

4   who was the motivating factor in this particular robbery.  I

5   think the Court can draw its own conclusions about how

6   premeditated this was.  Certainly some planning came into it,

7   but there's planning and there's planning.  The Court, of

8   course, has presided over a trial where there is real, real

9   planning and real, real contemplation.  I think the Court can

10  make its own decision here about whether those kinds of

11  factors warrant a sentence in excess of eleven years.

12        For all of those reasons, your Honor, I would ask the

13  Court to consider a sentence of 130 months or some sentence

14  intermediate to that that satisfies all the §3553(a) factors.

15  I am quite certain that Mr. Arthur, when he does come out,

16  whether it's in his early 50s or his mid 50s, is not going to

17  be a man who is in any position to recidivate.

18        THE COURT:  Thank you, counsel.

19        Mr. Arthur, you're not required to, but if you would

20  like to address me now, I'll hear you now.

21        THE DEFENDANT:  Yes.  Thank you.

22        First, I'd just like to apologize to the victim for

23  any type of suffering that I caused the victim and the family

24  and harm and stress.  I'd just like to apologize from the

25  bottom of my heart.

```
1              And I'd also like to apologize to my family for
2    putting them through stress and leaving my kids fatherless
3    again.  And I'd also like to apologize for being a burden on
4    my parents.  And I would like to apologize to the Court for
5    breaking the law and wasting the Court's time.
6              Since I have been locked up, I have done a lot of --
7    a lot of soul searching and I have definitely become a better
8    person now.  I've really had time to think about the different
9    things that I could do with myself better instead of getting
10   in trouble and then what I am going to -- what I am going to
11   do while I'm locked up.  Completely -- I'm going to completely
12   accomplish all my goals.  So I know that when I come home, I
13   will be ready for the work world and anything else because
14   that's the way for me succeeding.  Thank you.
15             THE COURT:  Thank you.
16             Mr. Shine, was there a Victim Impact Statement?  Is
17   this a --
18             MR. SHINE:  There was not, your Honor.
19             THE COURT:  Okay.  Counsel, Mr. Arthur, I'm going to
20   take a brief recess.
21             COURTROOM DEPUTY CLERK HOURIHAN:  All rise.  Court is
22   in recess.
23             (Recess taken.)
24             COURTROOM DEPUTY CLERK HOURIHAN:  Please be seated.
25             THE COURT:  I thank counsel for their arguments today
```

1    and their written papers on the parties' behalf.

2          Mr. Arthur, I must consider, and I have considered, a

3    number of factors in determining a reasonable sentence for the

4    crimes that you pled guilty to.  And you can remain seated

5    until I formally impose sentence.  I just want to explain my

6    reasons to you, sir.

7          I must and I have considered the nature and

8    circumstances of your crimes, your personal history and

9    background, the advisory Guideline Sentencing Range, and the

10   need for any sentence I impose to do several things:

11         To promote respect for the law, reflect the

12   seriousness of the offenses here, provide just punishment and

13   adequate deterrence to you and to others, and to avoid

14   unwarranted sentencing disparities, all of the factors under

15   Title 18, United States Code 3553(a).

16         As always, I remain mindful of the fact that I must

17   impose a sentence that is sufficient but not greater than

18   necessary to effect the goals of sentencing.

19         Let me begin with the crimes that you committed here,

20   and I won't rehash all of the facts.  You heard Mr. Shine

21   summarize them as reflected in the presentence report, and I'm

22   certainly well aware of them from the testimony I heard at

23   your suppression hearing and that I heard at Mr. Brown's

24   recent trial.

25         Let me just say that this was an armed robbery that

1    occurred on Halloween, if I recall correctly.  That both you

2    and Mr. Brown were carrying firearms, which became known and

3    you made known to the victim, Ms. Rodriguez, in the course of

4    the robbery.

5            The victim, the store clerk, was taken into the back

6    room, forced into the back room, which we saw in the video

7    during the trial, to get cash, and that you bound the victim

8    up on her hands and feet and her mouth and left her on the

9    ground.

10           I think it's fair to say and I think you acknowledge

11   to a certain degree in your statement today that you put her

12   in great fear and I saw great fear exhibited by her on the

13   stand during her testimony before me.

14           I know Mr. Shine referred to the planning involved in

15   this case.  I can't say -- as Mr. Watkins I think was

16   essentially arguing to me, I can't say that this was the most

17   sophisticated scheme or that there was great planning

18   involved, but there certainly was some planning involved.

19           I think it's a fair inference that a certain time of

20   day was picked when there were less customers around.  You

21   brought the necessary tools to effectuate the robbery, not

22   just the guns, but the duct tape, and you and Mr. Brown were

23   quick on your feet when customers came into the store when you

24   were still in the back with the victim.

25           I certainly acknowledge, as Mr. Watkins has pointed

1    out, that there was no physical injury that you caused to the

2    victim, but I think it's fair to say that there was serious

3    psychological harm, evidenced by her demeanor in court and the

4    circumstances of the robbery.

5         I would also say that the store clerk was not the

6    only victim here.  Certainly, to a lesser degree, the store

7    itself was a victim, but I think others in the community were

8    victims as well, the many law-abiding citizens in the

9    community, who I'm sure were alarmed by what the government

10   has characterized as a brazen act in broad daylight.

11        Mr. Arthur, these are serious crimes, not just the

12   threatened use of force here, the threat of violence that the

13   victim reasonably feared here with the use and the carrying of

14   the firearms that you used to effectuate the robbery.

15        Now, certainly, Mr. Arthur, the crimes, the nature of

16   them are not the only factors that I've considered.  I've

17   considered your personal background, which is also summarized

18   in the presentence report.  I think it's fair to say that you

19   grew up in an abusive household while your father was still a

20   part of it and that he eventually left your home and your

21   family.

22        You continued to be raised by your mother, who I

23   think, in your words, was a strict disciplinarian, but that

24   didn't keep you from getting into the trouble that you got

25   into, beginning at a young age.  I know that you've had some

1    learning challenges in school and left school in the tenth

2    grade, if I'm recalling correctly.

3            THE DEFENDANT:  That's right.

4            THE COURT:  And that some of your learning challenges

5    may have gone undiagnosed and untreated, rather, for a period

6    of time.  I know you've had some health issues and your

7    treatment for certain conditions, including depression, did

8    not start until well into your adulthood.

9            And I also recognize that you had substance abuse

10   issues, beginning at a very young age, involving alcohol, then

11   marijuana and then cocaine.  I know you've received some

12   treatment during a previous incarceration, but I take note of

13   all of those facts.

14           Mr. Arthur, if I recall correctly, you're now 41

15   years old.

16           THE DEFENDANT:  42.

17           THE COURT:  42.

18           And I think Mr. Shine's characterization of your

19   criminal record is not far off.  Focusing on your adult

20   record, I think there are entries from age 19 through age 29

21   that reflect both possession of firearms and discharge.  That

22   was Paragraph 55 in the PSR.

23           When you were 19 years old, if I recall correctly,

24   you received further incarceration because of a probation

25   violation.  You had another possession of a firearm without a

```
 1    license outside of your high school, what had been your high
 2    school, at age 21.  That's Paragraph 57.
 3            Paragraph 59, you were convicted of conspiracy to
 4    violate controlled substances laws at age 24 for a drug sale
 5    involving heroin.  You received some disciplinary reports
 6    during your incarceration.
 7            And, most recently, as Mr. Shine alluded to,
 8    Paragraph 61, you were convicted in another federal court in
 9    the District of Maine for conspiracy to possess with intent to
10    distribute both cocaine and cocaine base, for which you
11    received a 136-month sentence.  I know you that completed a
12    great majority of that, of your supervised release.  If I
13    recall correctly, 44 months of a 60-month --
14            THE DEFENDANT:  Yes.
15            THE COURT:  -- period of supervised release without
16    incident, but that you committed the instant crime while you
17    were still on supervised release.
18            Mr. Arthur, you have a lengthy criminal record
19    involving some serious crimes and I certainly -- I do commend
20    you for the work that you're doing during your current
21    incarceration and your compliance at least for a substantial
22    portion of your supervised release on the matter out of the
23    District of Maine, but I'm very concerned about what I think
24    this current set of crimes represents, which is an escalation
25    of a threat of violence and the involvement of a firearm.
```

```
 1    Here, involving a robbery, involving a victim, and involving

 2    the threat of violence and force.

 3          I'm also concerned -- as my question to your counsel,

 4    Mr. Watkins, suggested, I'm very concerned that this crime

 5    followed a 136-month sentence, over a ten-year sentence in

 6    federal prison that did not deter your willingness to

 7    participate in criminal activities.

 8          It's fair to say that the nature of your criminal

 9    history and the timing of sequence of this crime are what --

10    in this Court's estimation is what's driving your sentence.

11          There are some facts in your PSR that I previously

12    cited in mitigation and some mitigation here in terms of your

13    history of long untreated learning disabilities, the

14    Tourette's Syndrome that was also referenced.

15          I think there were many opportunities for

16    intervention, both educational and otherwise, that were missed

17    here.  Mr. Arthur, as I said, I take some note in recognition

18    of the progress that you've made during your current

19    incarceration, where I understand there had not been any

20    disciplinary reports.

21          THE DEFENDANT:  No, none.

22          THE COURT:  Mr. Watkins?

23          MR. WATKINS:  Yes.

24          THE COURT:  And during your past supervised release.

25          That having been said, I agree with the government
```

1   and Mr. Shine that a substantial sentence is warranted here

2   based on all of the factors I have considered.

3           I cannot say that 262 months, even at the low end of

4   the advisory Guidelines Sentencing Range, is appropriate here,

5   Mr. Shine, post *Booker*.  I think I have to make a more

6   searching inquiry to determine a sentence that's reasonable

7   and not accept 262 months to 327 months is per se reasonable.

8           But I also, Mr. Watkins -- as I think you can

9   probably understand, I disagree that a sentence of 130 months

10  is appropriate, not just in light of the District of Maine

11  sentence of 130 months, but just in consideration of all of

12  the factors here.

13          For all of these reasons, I'm going to impose a

14  sentence that is somewhat under the government's

15  recommendation, and I'm going to impose a sentence of 228

16  months, which is a very substantial sentence.  I recognize,

17  Mr. Arthur, it's still at or near the minimum of 240 months

18  for Count 1, the Hobbs Act robbery count, which I really think

19  is the lead and driving count here, and it's in recognition

20  both of the seriousness of the crime, the seriousness of the

21  criminal record, and all of the other factors that I've

22  referenced here, and is in full acknowledgment as well of the

23  impact on the victim and all of the goals of sentencing.

24          I also think that it's not greater than necessary,

25  Mr. Watkins, for all of the factors that I've considered.  For

1    that reason, I will impose a sentence of 228 months.

2          Mr. Orze, my intention, as I understand it -- and I'm

3    going to ask counsel in a moment if they have any objections

4    to the sentence, but let me just explain how I intend to

5    impose it.

6          I intend to issue a judgment for 228 months, a term

7    consisting of 144 months on Count 1, and 120 months on Count

8    3, to be served concurrently, and 84 months to follow

9    consecutively on Count 2, and I think that both complies with

10   the statutory maximums as to each count, but amounts to 228

11   months.  Do you have any --

12         PROBATION OFFICER ORZE:  Yes, your Honor.  That's

13   correct.

14         THE COURT:  Counsel, I will also impose a five-year

15   supervised release, as was recommended by both parties.  No

16   fine.  And a mandatory $300 special assessment.

17         Mr. Shine, do you want to be heard?

18         MR. SHINE:  No, your Honor.  Thank you.

19         THE COURT:  Okay.  And, Mr. Shine, do you agree with

20   the way in which I'm planning to impose the sentence in terms

21   of the counts?

22         MR. SHINE:  I agree with the way in which you impose

23   it.

24         THE COURT:  Okay.  Mr. Watkins, do you want to be

25   heard or have any objections to the sentence or how I intend

1    to impose it?

2         MR. WATKINS:  I've asked for 130 months.  As far as

3    the procedural way, I have no objection.

4         THE COURT:  Counsel, Mr. Shine, were there any

5    particular conditions of supervised release?  I have

6    recommendations about substance abuse counseling and mental

7    health treatment and participation in vocational service

8    training, but anything other than, other than the mandatory

9    conditions?

10        MR. SHINE:  No.  Based on the length of the sentence,

11   it would be difficult for him to participate in 228 months,

12   but Probation is flexible, I'm sure.

13        THE COURT:  Mr. Watkins, anything in terms of the

14   conditions?

15        MR. WATKINS:  No, your Honor.

16        THE COURT:  Mr. Arthur, I am now going to ask you to

17   raise.

18        Mr. Arthur, pursuant to the Sentencing Reform Act of

19   1984 and having considered the sentencing factors enumerated

20   in Title 18 United States Code 3553(a), it is the judgment of

21   this Court that you are hereby committed to the custody of the

22   Bureau of Prisons to be imprisoned for a term of 228 months.

23        This term consists of terms of 144 months on Count 1,

24   120 months on Count 3 to be served concurrently, and 84 months

25   to be served on Count 2 which is to be served consecutively to

1    the term of imprisonment on Counts 1 and 3.

2            I'll make a judicial recommendation that you

3    participate in substance abuse treatment while in BOP custody,

4    and I also recommend that you participate or continue to

5    participate in educational programs and vocational training

6    during your time in prison.

7            Upon release from imprisonment, you shall be placed

8    on supervised release for a term of five years.  This term --

9    and, Mr. Orze, can I do it concurrently on all of the counts

10   or I think I have to do it -- excuse me.  I have to do it as

11   to Count --

12           PROBATION OFFICER ORZE:  Three years on Count 1 and

13   five years on Count 2.

14           THE COURT:  Okay.  I will impose five years on Count

15   2 and three years on Counts 1 and 3 to be served concurrently

16   with a five-year term of supervised release.

17           Within 72 hours of release from custody of the BOP,

18   you shall report in person to the district to which you are

19   released.

20           I'm not imposing a fine, given my determination that

21   you don't have a financial ability to pay one.

22           In terms of your conditions of supervised release,

23   you shall not commit another federal, state or local crime and

24   shall not illegally possess a controlled substance.  You shall

25   refrain from any unlawful use of controlled substance.  You

1   shall submit to one drug test within 15 days of release from

2   imprisonment and at least two periodic drug tests thereafter,

3   not to exceed 104 tests per year, as directed by Probation.

4   You shall submit to the collection of a DNA sample, as

5   directed by Probation, and you shall comply with all of the

6   standard conditions that have been adopted by the Court and

7   will be explained in my judgment.

8          In addition, you're prohibited from possessing a

9   firearm, destructive device or other dangerous weapon.  You're

10  to participate in a program for substance abuse counseling and

11  for mental health treatment, as directed by Probation.

12         As part of -- God bless you.  As part of any

13  substance abuse counseling, you may also be subject to random

14  drug testing.  As to either of these treatment programs, you

15  shall be required to contribute to the cost of service based

16  on your ability to pay or the availability of third-party

17  payment.

18         You shall also participate in any vocational service

19  training programs or educational programs, as directed by

20  Probation, and you may also be required to contribute to the

21  payment for that programming based on your ability to pay or

22  third-party payment.  You're also ordered to pay a $300

23  special assessment.

24         You may be seated.

25         That will be the judgment of the Court.

1          Counsel, other than advising Mr. Arthur of his

2    appellate rights, any matters to address?

3          MR. SHINE:  There was a forfeiture allegation, I

4    believe, in the judgment.

5          THE COURT:  Okay.  Is there a proposed order?

6          MR. SHINE:  Our forfeiture unit will forward

7    something down to the Court.

8          THE COURT:  I'll review it once I receive it,

9    counsel.

10          At this point other than advising Mr. Arthur of his

11    appellate rights, are there other matters to address?

12          MR. SHINE:  No other matters, your Honor.  Thank you.

13          THE COURT:  Mr. Orze?

14          PROBATION OFFICER ORZE:  No, your Honor.

15          THE COURT:  Mr. Watkins?

16          MR. WATKINS:  No, your Honor.

17          THE COURT:  Mr. Arthur, I must also advise you that

18    you can appeal your conviction if you believe your guilty plea

19    was unlawful or involuntary or if there's some other

20    fundamental defect in the proceeding that was not waived by

21    your guilty plea.

22          You also have the right to appeal your sentence,

23    particularly if you think the sentence was contrary to law.

24          If you're unable to pay the costs of appeal, you may

25    ask permission to have those costs waived and appeal without

1    paying.  You must file any Notice of Appeal within 14 days

2    after the entry of judgment.  If you request, the Clerk will

3    immediately prepare and file a Notice of Appeal on your

4    behalf.  Thank you.

5            MR. SHINE:  Thank you, your Honor.

6            COURTROOM DEPUTY CLERK HOURIHAN:  All rise.

7            (Adjourned, 3:05 p.m.)

8

9

10                   C E R T I F I C A T E

11           I, Catherine A. Handel, Official Court Reporter of the

12   United States District Court, do hereby certify that the

13   foregoing transcript, from Page 1 to Page 31, constitutes to the

14   best of my skill and ability a true and accurate transcription of

15   my stenotype notes taken in the matter of Criminal Action No.

16   12-10025-DJC, United States of America versus Lynch Arthur.

17

18

     August 29, 2013        /s/Catherine A. Handel
19   Date                   Catherine A. Handel, RPR-CM, CRR

20

21

22

23

24

25